# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>**Plaintiff**<br><br>v.<br><br>ALDO PIMENTEL-RAMIREZ<br><br>**Defendant** | **CRIMINAL NO. 19-00744 (RAM)** |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge.

Pending before the Court are the following motions: Defendant Aldo Pimentel-Ramírez's ("Mr. Pimentel" or "Defendant") *Motion Requesting De Novo Review of Bail* (Docket No. 15) and the United States' *Response to Motion for DeNovo Hearing on Defendant's Detention* (Docket No. 23). For the reasons explained below, Defendant shall remain detained awaiting trial.

## I. BACKGROUND

On November 13, 2019, U.S Customs and Border Protection ("CBP") Officers assigned to the Luis Muñoz Marin International Airport intervened with defendant Aldo Pimentel Ramirez. (Docket No. 1-1 ¶ 4). The CBP Officers had received information that a passenger, later identified as Mr. Pimentel, was travelling to Santo Domingo, Dominican Republic with a large amount of currency

in his luggage. Id. Mr. Pimentel was travelling with his brother Regis Ramírez Pimentel. Id. ¶ 5.

During the intervention, Mr. Pimentel was found to be in possession of $80,000 in cash after declaring to CBP Officers both orally and in a FinCen Form 105 that he was travelling with only $10,000 and that his brother was travelling with $9,900. Id. ¶ 5-7. The alleged $9,9000 declared by his brother turned out to be another $10,000 also belonging to Defendant. Id. ¶ 8. The balance of $60,000 was found in six (6) vacuum sealed packs (containing $10,000 each) within a wine carrier bag belonging to Defendant. Id. ¶ 7.

Also on November 13, 2019, a criminal complaint was filed charging Mr. Pimentel with violations of 31 U.S.C. § 5316 (Failure to Declare the Transportations of Monetary Instruments in Excess of $10,000) and 41 U.S.C. § 5332 (Bulk Cash Smuggling Into or Out of the United States). (Docket No. 1). Moreover, the U.S. Department of Homeland Security issued an immigration detainer and Defendant is subject to removal proceedings from the United States. (Docket No. 23 ¶ 9).

On November 18, 2019, a Grand Jury returned a three-count indictment against Mr. Pimentel and charged him with violations of: (a) 31 U.S.C. § 5332 (Bulk Cash Smuggling Into or Out of the United States); (b) 31 U.S.C. § 5324(c)(3)(International Monetary Transactions-Structuring); and (c) 18 U.S.C. § 1001(a)(2) (False

Statement Made to a Department or Agency of the United States). (Docket No. 10).

On November 20, 2019, a detention hearing was held before a Magistrate Judge which ordered that Mr. Pimentel be detained pending trial because he posed a strong risk of flight based on the following findings: (a) the weight of evidence against Defendant is strong; (b) significant family or other ties outside the United States; and (c) lack of legal status in the United States. (Docket No. 13 at 2-3). Mr. Pimentel's *Motion Requesting De Novo Review of Bail* and the Government's opposition thereto ensued. (Docket No. 15).

The Court held a *de novo* hearing on December 10, 2019. (Docket No. 32). Defendant presented the testimony of his father, Regis Pimentel Sr., who vouched for his son's good character and sought to support Defendant's assertion that the seized cash comes from legitimate business endeavors. Defendant also presented the testimony of Messrs. Eduardo García and Patricio Peña-Cabrera who are two business associates turned family friends who are prepared to post security for Mr. Pimentel's release. Mr. García is also willing to serve as the third-party custodian and house Defendant under his roof.

## II. LEGAL STANDARD

**A. Standard of review for a detention or release order:**

A district court reviews a Magistrate Judge's order of detention or release under a *de novo* standard and "need not defer to the magistrate judge's findings or give specific reasons for rejecting them." *See* United States v. Cidraz-Santiago, 18 F. Supp. 3d 124, 126 (D.P.R. 2014). A district court may also "take additional evidence or conduct a new evidentiary hearing when the defendant has placed relevant facts at issue." Id.

**B. The Bail Reform Act:**

Pursuant to the Bail Reform Act of 1984 (the "Act"), a judicial officer must determine whether a person charged with an offense shall be detained or released. *See* 18 U.S.C. § 3141(a). Section 3142(e) of the Act provides that ultimately, if after conducting a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial." 18 U.S.C. § 3142(e).

Section 3142(f) of the Act establishes the instances in which an accused individual is eligible for detention and therefore, a detention hearing is proper. *See* 18 U.S.C. § 3142(f). Specifically, Section 3142(f)(1)(a) of the Act requires that the judicial officer shall hold a detention hearing upon motion of the attorney for the

Government in cases which involve "a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. § 3142(f)(1)(a). Likewise, Section 3142(f)(2) authorizes the court to hold a detention hearing upon government motion or *sua sponte* in cases that involve "a serious risk that such person will flee" **or** "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2). The standard of proof for detention due to dangerousness is clear and convincing evidence. Id. In turn, the standard of proof for detention due to risk of flight is preponderance of the evidence. *See* United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

When determining whether there are conditions of release to assure the defendant's appearance and the safety of the community during a detention hearing, judicial officers must take into consideration the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

Under the Act, a decision to detain must be supported by written findings of fact and a statement of reasons and is immediately reviewable. *See* 18 U.S.C. § 3142(i).

### III. DISCUSSION

**A. An analysis of the Section 3142(g) factors indicates that detention pending trial is proper**

**1. The nature and circumstances of the offense charged:**

Mr. Pimentel was indicted for violating:

- 31 U.S.C. § 5332 (Bulk Cash Smuggling Into or Out of the United States);

- 31 U.S.C. § 5324(c)(3) (International Monetary Transactions-Structuring); and

- 18 U.S.C. § 1001(a)(2) (False Statement Made to a Department or Agency of the United States).

(Docket No. 10). These offenses carry maximum sentences of five (5) years on imprisonment. He was in possession of $80,000 in cash after declaring to CBP Officers both orally and in a FinCen Form 105 that he was travelling with only $10,000 and his brother was travelling with $9,9000 which turned out to be another $10,000, also belonging to Defendant. (Docket No. 1-1). The additional $60,000 was in six (6) vacuum sealed bags, each containing $10,000 inside of a wine cooler suite case belonging to Defendant. (Docket No. 1-1 ¶ 7).

The provenance of these large sums of cash remains unexplained. While Defendant sought to make a showing at the hearing that the monies come from legitimate business activities, the documentary evidence presented did <u>not</u> provide a coherent explanation for the source of the money as it consisted of sundry invoices and a partial ledger purportedly reflecting payments for wine sales. (Docket Nos. 15-15, 15-16). The picture is further clouded because Defendant purportedly mixes his personal and business accounts and the TD bank statement does not justify Mr. Pimentel's possession of such a large amount of cash. (Docket No. 15-12). Lastly, travelling with large amounts of vacuum-sealed cash is not consistent with legitimate business activity. *See e.g.* <u>United States v. $242,484</u>, 389 F.3d 1149, 1161 (11th Cir. 2004) ("A common sense reality of everyday life is that legitimate businesses do not transport large quantities of cash rubber-banded into bundles and stuffed into packages ... because there are better, safer means of transporting cash if one is not trying to hide it from the authorities.").

**2. The weight of the evidence against the Defendant:**

The weight of the evidence against the Defendant is strong. Namely, Defendant was found to possess no less than $80,000 in undeclared currency after telling CBP agents that he only had $10,000 and his brother another $9,900 and disclosing a lesser amount of cash in the FinCen Form 105 than what he was

transporting. "[N]umerous courts have recognized that the seriousness of the charge and the weight of the evidence can create a strong incentive for a defendant's flight." United States v. Rodriguez-Adorno, 606 F. Supp. 2d 232, 236 (D.P.R. 2009).

**3. The History and Characteristics of the Defendant:**

Mr. Pimentel is a 33-year-old male, in good health, and with no known criminal history. He is a citizen of the Dominican Republic with bachelor and graduate degrees in Business Administration and reputedly engaged in the business of trading tobacco, wine and spirits. Mr. Pimentel is a lifelong resident of the Dominican Republic. He was born in Santiago, Dominican Republic, where his parents, siblings, wife and Defendant himself all reside. He has reportedly travelled to Cuba, Nicaragua and Spain. Mr. Pimentel is a native Spanish speaker and is fluent in English and French.

Mr. Pimentel's alienage, on its own, is not inherently probative of a serious risk of flight nor is it a factor that "tip[s] the balance either for or against detention." United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985). Instead the fundamental question is what ties Mr. Pimentel has with the United States in general and with Puerto Rico in particular. When tasked with assessing an alien defendant's ties to the United States, courts should consider the following factors: "how long the defendant has resided in this country, whether defendant has been

employed in the United States, whether defendant owns any property in this country, and whether defendant has any relatives who are United States residents or citizens." U.S. v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990).

Defendant's only known properties in the United States are: (a) his participation in Vegas de Sabanera, LLC; and (b)an account with TD Bank in New York.  The value of Mr. Pimentel's investment in Vegas de Sabanera, LLC is unknown and the balance of the TD Bank account pales in comparison with the amount of cash seized from Mr. Pimentel on November 13, 2019.[1] However, Pimentel does not own any property in Puerto Rico. Moreover, Pimentel does not have relatives in Puerto Rico, has not resided in Puerto Rico, nor has he been employed in Puerto Rico. His ties with this district are limited to clients and acquaintances.

Additionally, Mr. Pimentel was travelling to the United States on a B1/B2 Visa which has been cancelled.  A detainer has been issued against him and thus he faces deportation proceedings if released from the custody of the U.S. Marshals Service.

---

[1] Defendant valued his "business" at $60,000.  Given that Mr. Pimentel reportedly also owns an Limited Liability Company in the Dominican Republic, the whole reported "value" of his participation in the LLC would be less than $60,000. As of February 13, 2019, the balance of the TD Bank account was $8,137.38 Bank. (Docket No. 15-12).

**B. No set of conditions that will reasonably assure the appearance of the person as required**

Mr. Pimentel has offered the following conditions:

- A $200,000.00 unsecured bond from his father who reportedly has properties exceeding that amount but located in the Dominican Republic

- A $50,000.00 unsecured bond to be issued by Patricio Peña, a business associate and family friend;

- A $500,000.00 bond secured by collateral belonging to Eduardo Garcia, a U.S. Citizen who is a business associate and family friend and would serve as third-party custodian; and

- GPS anklet.

The Court is of the view that these conditions are insufficient to assure his appearance at trial for the following reasons.

First, Mr. Pimentel is a non-resident alien whose family and strong community ties are in the Dominican Republic. He has **no** property, family or strong community ties in Puerto Rico and weak ties to the rest of the United States.

Second, Mr. Pimentel is subject to deportation. Immigration authorities, i.e. the Immigration and Customs Enforcement ("ICE"), **are not bound to stay deportation in deference to this judicial proceeding**. See United States v. Vasquez-Benitez, 919 F.3d 546 (D.C. 2019) ("ICE's authority to facilitate an illegal **alien**'s removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal

trial"). Although ICE may temporarily decline to deport an individual during criminal proceedings, district courts cannot **order** ICE to do so. *See* United States v. Veloz-Alonso, 910 F.3d 266, 268-270 (6th Cir. 2019). As recently noted by the U.S. District Court for the District of Massachusetts, "it is perhaps an unusual situation where the U.S. Attorney's Office, having indicted a defendant, runs the risk that he will be removed by ICE before the conclusion of their prosecution […] [s]uch scenario, however, is not barred by the BRA [Bail Reform Act] or any intersection with the INA [Immigration and Naturalization Act]." United States of America v. Waad Alzarei, 2019 WL 2642824 (D. Mass. 2019).

If deported, Mr. Pimentel may very well choose **not** to return to face the charges in this case. The evidence at the *de novo hearing* showed by preponderance of the evidence that Mr. Pimentel has at his disposal large sums of cash and far flung business relations.[2] Moreover, he has travelled abroad extensively. *See* United States v. Arndt, 329 F. Supp. 2d 182, 198 (D. Mass. 2004) (finding a defendant to be a risk of flight in part because of his frequent travel in the past and access to considerable sums of money that would provide means to flee). These factors nullify

---

[2] In addition to the cash that was seized, a photograph extracted from his phone depicted a large pile of cash and was prefaced by text representing the cash was at his disposal. Documents purporting to be Commercial invoices presented at the hearing showed that he purportedly has a client in Estonia.

the representations of the two business associates and friends who are willing to post security for his release, well intended as they might have been. *See* Townsend, 897 F.2d 989 (9th Cir. 1990).

### IV.   CONCLUSION

The Court finds that no set of conditions will reasonably assure Mr. Pimentel's appearance as required considering: (a) Defendant's status as a non-resident alien who may be deported to his home country by immigration authorities; (b) his lack of property, family and community ties in Puerto Rico; (c) the weight of the evidence against him; and (d) the minimal value of his property in the United States.

Pursuant to the above, Defendant Aldo Pimentel-Ramírez **SHALL REMAIN DETAINED PENDING TRIAL.**

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 17th day of December 2019.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge